11-2805-ag
Masoud v. Holder

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 10th day of July, two thousand twelve.

Present:     ROSEMARY S. POOLER,
             REENA RAGGI,
             GERARD E. LYNCH,
                      *Circuit Judges*.

---

FAWZIYEH RAKI MASOUD, AKA FAWZIYEH RAKI,
AKA FAWZIYEH HADABA, AKA FAWZI, AKA
"THE HAJA,"

                         *Petitioner*,

          -v.-                                          11-2805-ag

ERIC H. HOLDER, JR., UNITED STATES
ATTORNEY GENERAL,

                         *Respondent*.

---

Appearing for Appellant:     Jonathan R. Nelson, New York, N.Y.

Appearing for Appellee:      Colin J. Tucker, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice (Tony West, Assistant Attorney General, Terri J. Scadron, Assistant Director, *on the brief*), Washington, D.C.

Petition for review of an order of the Board of Immigration Appeals ("BIA").

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Fawziyeh Raki Masoud seeks review of a June 13, 2011 order of the BIA affirming the June 26, 2009 decision of Immigration Judge ("IJ") Gabriel C. Videla ordering her removal from the United States. *In re Fawziyeh Raki Masoud*, No. A040 172 475 (B.I.A. June 13, 2011), *aff'g* No. A040 172 475 (Immig. Ct. N.Y. City June 26, 2009). We assume the parties' familiarity with the underlying facts and procedural history of this case.

Under the Immigration and Nationality Act ("INA"), "an offense that . . . involves fraud or deceit in which the loss to the victim . . . exceeds $10,000" is an aggravated felony. *See* INA § 101(a)(43)(M)(i), 8 U.S.C. § 1101(a)(43)(M)(i). When a noncitizen is convicted of an offense involving fraud and charged with removability under this subsection, the court must engage in a "circumstance-specific" analysis to determine whether the loss amount attributable to the offense exceeds $10,000, *Nijhawan v. Holder*, 557 U.S. 29, 38-40 (2009), which requires the government to establish "by clear and convincing evidence that the circumstances surrounding the specific counts of conviction involve the requisite amount of loss under the INA," *Pierre v. Holder*, 588 F.3d 767, 773 (2d Cir. 2009). In particular, "the loss [found by the agency] must be *tied* to the specific counts covered by the conviction." *Nijhawan*, 557 U.S. at 42 (emphasis added) (internal quotation marks omitted).

The principal issue in this case is whether the agency erred in determining that Masoud's conviction for wire fraud in violation of 18 U.S.C. § 1343 constituted an aggravated felony under INA § 101(a)(43)(M)(i), 8 U.S.C. § 1101(a)(43)(M)(i). It is undisputed that the offense involved fraud; at issue is whether the agency erred in concluding that the charging document and judgment of conviction demonstrated by clear and convincing evidence that the loss to the victim(s) exceeded $10,000. Although we generally lack jurisdiction to review a final order of removal based on a conviction of an aggravated felony, 8 U.S.C. § 1252(a)(2)(C), we retain jurisdiction to decide questions of law and constitutional claims, *id.* § 1252(a)(2)(D), including whether the agency properly determined that Masoud's conviction was an aggravated felony, *see Pierre v. Gonzales*, 502 F.3d 109, 113 (2d Cir. 2007). We review Masoud's claims de novo. *See Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

Masoud first argues that her criminal information is insufficient evidence of loss amount because the particular count to which Masoud pleaded guilty did not specify a loss amount. She conceded before the agency both that the prefatory allegations in the information alleged that the overall scheme caused a loss of approximately $359,739.95, and that the scheme did in fact "involve[] a loss of over $300,000." She argues, however, that, under *Nijhawan*, the loss amount included in the prefatory allegations was not sufficiently "tied" to Masoud's conviction because the prefatory allegations "did not link [the $359,739.95 loss] in any way to [Masoud]'s conduct."

2

Masoud 's argument relies on a misunderstanding of the scope of her liability. The elements of wire fraud are (1) knowing participation in a scheme to defraud, (2) specific intent to defraud, and (3) use of the wires in furtherance of the scheme. *E.g.*, *United States v. Davuluri*, 239 F.3d 902, 906 (7th Cir. 2001).[1] That is, "the crime comprehended by the mail and wire fraud statutes is the *scheme* to defraud, not just the isolated iterations of wire transmissions or mailings." *United States v. Locke*, 643 F.3d 235, 247 (7th Cir. 2011) (emphasis added). As a matter of law, then, Masoud pleaded guilty not only to the discrete use of the wire described in the count to which she pleaded guilty, but also to (1) using the wire "in furtherance of" a scheme to defraud that caused $359,739.95 in losses, (2) being a knowing *participant* in that scheme, and (3) having a specific intent to defraud. *See Davaluri*, 239 F.3d at 906. As such, the loss caused by the scheme was directly attributable to Masoud. *See United States v. Wormick*, 709 F.2d 454, 461 (7th Cir. 1983) (holding that conspiracy doctrines apply to multi-member mail fraud schemes); *United States v. Read*, 658 F.2d 1225, 1230 (7th Cir. 1981) ("Each conspirator is liable for overt acts of every other conspirator done in furtherance of the conspiracy, whether the acts occurred before or after he joined the conspiracy."). Therefore, contrary to Masoud's contention, the loss amount alleged in the criminal information was sufficiently "tied" to her convicted conduct to support the agency's finding that she was convicted of an aggravated felony. *See Doe v. Att'y Gen. of U.S.*, 659 F.3d 266, 276 (3d Cir. 2011) (concluding that losses stated in complaint were sufficiently "tied" to convicted conduct where petitioner "pled guilty not to a single fraudulent transaction but to aiding and abetting the whole of a large-scale criminal endeavor").

Masoud further argues that the district court's decision not to order her to pay restitution proves that Masoud's offense caused no loss. Masoud misreads the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. Contrary to Masoud's contention that the MVRA required the district court to impose restitution exactly equal to Masoud's individual liability, the MVRA neither requires imposition of restitution in every case, *see* 18 U.S.C. § 3663A(c)(3)(A)-(B), nor deprives a district court of "discretion in apportioning liability where multiple defendants are involved," *see United States v. Walton*, 217 F.3d 443, 451 (7th Cir. 2000); 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."). Thus, far from compelling the conclusion that Masoud's conviction involved no loss, the district court's decision not to order Masoud to pay restitution is indeterminate. For this reason, the fact that the district court did not order restitution did not preclude the agency from relying on the loss amount alleged in the criminal information to conclude that the government had proved by clear and convincing evidence that Masoud's conviction was for an offense "involv[ing] fraud or deceit in which the loss to the victim . . . exceed[ed] $10,000." INA § 101(a)(43)(M)(i), 8 U.S.C. § 1101(a)(43)(M)(i).

---

[1]Because Masoud was convicted in the Eastern District of Wisconsin, we look to Seventh Circuit authority to determine the scope of her liability for her wire fraud conviction. *Cf. Ragbir v. Holder*, 389 F. App'x 80, 83 n.4 (2d Cir. 2010) (summary order) ("Because Ragbir was convicted of fraud in the District of New Jersey, we cite Third Circuit authority in determining the potential scope of the restitution order at issue.").

Masoud also raises two due process claims: (1) that the IJ deprived Masoud of due process by failing to order an adjournment sua sponte after the Supreme Court issued the *Nijhawan* decision, and (2) that the agency deprived Masoud of due process by failing to consider the fact that the criminal court did not order restitution or impose a prison sentence. We are precluded from considering the first claim because Masoud failed to raise this issue before the agency and the government raises issue exhaustion as an affirmative defense. *See Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 107 n.1 (2d Cir. 2007); *Theodoropoulos v. INS*, 358 F.3d 162, 172-74 (2d Cir. 2004). As to the second claim, we may consider it because it is "subsidiary" to Masoud's exhausted claim that the agency lacked sufficient evidence of the loss amount. *See Gill v. INS*, 420 F.3d 82, 85-86 (2d Cir. 2005). This claim nonetheless fails because nothing in the record suggests that the agency did not consider all of the evidence. *See Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 338 n.17 (2d Cir. 2006) (noting that this Court will "presume" that the agency "has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise"); *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 169 (2d Cir. 2008) (noting that the agency has no obligation to "expressly parse or refute on the record each . . . piece of evidence").

We note that Masoud has filed a separate petition for review of a denial of a motion to reopen, No. 12-668, and that she has moved for appointment of counsel in that case. That motion will be decided by a panel in due course and we do not address it in this Order.

We have reviewed the remainder of Masoud's arguments and found them to be without merit. We therefore DENY the petition for review. The previously granted stay of removal is VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk