IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

ROBERT ROUTLEDGE,　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
　　　　　　Plaintiff,　　　　　　 )　 TC-MD 170396G
　　　　　　　　　　　　　　　　　 )
　　　v.　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
DEPARTMENT OF REVENUE,　　　　　 )
State of Oregon,　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
　　　　　　Defendant.　　　　　　 )　 **FINAL DECISION**[1]

Plaintiff (taxpayer) reported no income on his 2016 return on the theory that the remuneration he received from his employer was not wages. Defendant (the department) assessed tax and penalties, including the frivolous-return penalty and the intent-to-evade penalty. At trial, taxpayer appeared and testified on his own behalf. Joshua Lawson, Audit Unit, Personal Tax and Compliance, appeared and testified on behalf of the department. Plaintiff's exhibits 1 to 17 were admitted without objection. Defendant's exhibit B was admitted without objection, and Defendant's exhibits A and C were admitted with objection.

## I. STATEMENT OF FACTS

During all relevant times, taxpayer received compensation for work he performed as an employee of an electronics manufacturer ("the company"). Since at least 2012, and continuing through April 2016, he filed personal income tax returns each year reporting income for the previous year. (Ex C at 1–2.) Taxpayer paid his tax liability in full each year. (*Id.*)

Taxpayer read an online article in April 2016 that alerted him to the theory that money received from private employers did not qualify as "wages" under the Internal Revenue Code

---

[1] This Final Decision incorporates without change the court's Decision, entered July 19, 2018. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

(IRC) and was therefore not taxable. In July 2016, after conducting further research, he filed an amended 2015 state return and substitute W-2 reporting zero wages received, zero income, zero withholding, zero tax, and zero refund. (Ex 11 at 1–6.) In September 2016, he filed an amended return and substitute W-2 with the Internal Revenue Service (IRS), also reporting zero income and zero wages received. (*Id*. at 7–9.) His federal substitute W-2 reported federal social security and Medicare tax withheld, but no federal income tax withheld, and he did not claim an overpayment on his amended return. (*Id*.) Taxpayer attempted to file amended returns for previous years as well. (*See* Ex 15–16.)

Taxpayer continued on his new course in 2017, filing zero returns and substitute W-2s for 2016 with both the department and the IRS. (Exs 1, 7.) Taxpayer's 2016 federal return reported an overpayment of $9,231.52 but requested a refund of only $2,500. (Ex 1.) The amount of the overpayment he reported was equal to the sum of the Social Security and Medicare tax reported as withheld on the W-2 issued by the company. (*See* Ex A.) Taxpayer wrote a letter to the IRS informing it that the company's W-2 was incorrect because it alleged he had received "wages" in 2016. (Ex 2.) After a written exchange in which the IRS sent a 12C letter requesting additional information supporting taxpayer's withholding entry and taxpayer replied in a letter referencing his substitute W-2, the IRS adjusted his requested refund and issued him the full $9,231.52. (Ex 4–6.) When asked during his testimony why he had not requested a refund of his full reported overpayment, taxpayer declined to explain, saying it was his "personal preference."

Unlike the IRS, the department issued taxpayer a Notice of Deficiency. (*See* Ex 8 at 1.) Taxpayer responded to the deficiency notice by requesting "a verified proof of claim signed under penalty of perjury by an agent * * * with the appropriate delegated authority, pursuant to 15 U.S.C. 1692g(b)." (*Id*.) The department then issued a Notice of Assessment for 2016 that

included penalties for filing a frivolous return, for intent to evade, for substantial understatement of net tax, and for failure to pay. (Compl at 2.) Taxpayer responded to the assessment notice by again requesting a "proof of claim." (Ex 9.)

On appeal to this court, taxpayer asks that the department's assessment of tax, penalties, and interest be abated. The department asks that its assessment be affirmed and that the court award it an additional $5,000 for frivolous appeal damages under ORS 305.437.

## II. ANALYSIS

Four issues are before the court:

(1) Whether the department's assessment was unlawful because it did not provide taxpayer with a "proof of claim";

(2) Whether the money taxpayer received from the company was reportable as income;

(3) Whether taxpayer is subject to penalties for taking frivolous positions on his return and on appeal; and

(4) Whether taxpayer is subject to penalty for filing a false return with intent to evade tax.

Each issue will be dealt with in turn. With the exception of the intent-to-evade penalty, each of those issues primarily involves a legal question.

A.    *Proof of Claim*

Taxpayer argues that the department's assessment against him was unlawful because it never sent him "a verified proof of claim signed under penalty of perjury by an agent [of the] department with the appropriate delegated authority, pursuant to 15 U.S.C. 1692g(b)." (Ex 8.)

15 USC section 1692g(b) is a provision of the Fair Debt Collection Practices Act that requires debt collectors to cease collection efforts upon receiving written notice from a "consumer" that a debt is disputed "until the debt collector obtains verification of the debt or a

copy of a judgment * * * and a copy of such verification or judgment * * * is mailed to the consumer by the debt collector." For purposes of the Fair Debt Collections Practices Act, the term *debt collector* "does not include * * * any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties[.]" 15 USC § 1692a(6)(C). For that reason, the requirements of 15 USC section 1692g do not govern the collection activities of taxing authorities. *See Loren G. Rice Trust v. Comm'r*, 104 TCM (CCH) 514, 2012 WL 5356140 at *9 (2012) (holding IRS not subject to section 1692g) .

Taxpayer argues the department's assessment was invalid because it did not provide him with the documentation required by 15 USC 1692g. Two considerations suffice to show that argument is without merit. First, the department's employees are state employees and therefore not bound by 15 USC section 1692g when performing their official duties. *See* 15 USC § 1692a(6)(C). Second, even if the department's employees were so bound, the statute cited by taxpayer does not provide that a debt becomes void where a debt collector fails to comply with the Fair Debt Collections Practices Act. The validity of the department's assessment does not depend on its issuing an additional "proof of claim."

B.    *Income*

Oregon residents are subject to tax on their "entire taxable income." ORS 316.037(1)(a).[2] Subject to additions, subtractions, and modifications not pertinent here, Oregon taxable income is equal to federal taxable income as defined in IRC section 63. ORS 316.022(6); ORS 316.048. Federal taxable income, in turn, is equal to gross income minus allowable deductions. IRC §§ 63(a),(b); 62(a).

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

"[G]ross income means all income from whatever source derived, including (but not limited to)" a list of items. IRC § 61(a). First on that itemized list is the following: "Compensation for services, including fees, commissions, fringe benefits, and similar items[.]" IRC § 61(a)(1).

Here, Taxpayer was paid by the company for the services he performed. As compensation for services, those gains fell squarely within the definition of gross income. *See* IRC § 61(a)(1).

Taxpayer argues that the money he received was specifically exempted from taxation by IRC sections 3401(a) and 3121(a) because it was not "remuneration for services in the course of a 'trade or business[.]' " (Compl at 3.) Specifically, taxpayer contends that private companies such as his employer are not engaged in "trade or business." Taxpayer looks to a definition found in IRC section 7701(a)(26): "The term 'trade or business' includes the performance of the functions of a public office." Taxpayer's conclusion is that only holders of public office engage in "trade or business." Because Taxpayer worked for a private company, his position is that his income is exempt from taxation.

Taxpayer's interpretation of "trade or business" is wrong,[3] but his argument would fail regardless because IRC section 3401(a) and 3121(a) do not exempt employees from reporting nonwage income. Those sections concern employers' duties to withhold tax from wages and pay employment tax. Employers are generally required to withhold tax from their employees' wages and pay employment tax. IRC §§ 3102(a). IRC section 3401(a) defines "wages" for purposes of chapter 24, pertaining to the duty of employers to withhold income tax. IRC section 3121(a)

_____

[3] IRC § 7701(a)(26) expands the concept of "trade or business" to include public service without excluding private business. *See* IRC § 7701(c) ("The terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined.")

defines "wages" for purposes of chapter 21, pertaining to employment tax. Each definition of "wages" excludes most remuneration paid "for service not in the course of the employer's trade or business * * *." IRC §§ 3401(a)(4); 3121(a)(7). The import of those exclusions is that employers paying employees for such services are not required to pay or withhold employment tax or withhold income tax. *Cf*. IRC § 3102(a); 3111(a); 3402(a).

The exclusion of certain payments from "wages" under the employment tax and withholding chapters does not exempt persons receiving those payments from reporting them as income. To the contrary, "[c]ompensation for services" is specifically included in the IRC's definition of income, without reference to whether the compensation was "wages" or whether the services were performed in the course of a "trade or business." IRC § 61(a)(1). Taxpayer incorrectly excluded the payments reported as wages on the W-2 issued by the company.

C.      *Frivolous Position*

The department assessed taxpayer the $250 frivolous-return penalty under ORS 316.992 and now requests that the court impose a $5,000 frivolous-appeal penalty under ORS 305.437. ORS 316.992(1) requires the department to assess a penalty against any individual person who files a return that is facially incorrect due to a "position which is frivolous[.]" ORS 305.437 requires this court to impose a penalty of up to $5,000 on taxpayers who adopt a position on appeal that is "frivolous or groundless." Because taxpayer argued the same position on appeal as he did when filing his return, the two penalties stand or fall together.

A position is frivolous "if there was no objectively reasonable basis for asserting the position." ORS 305.437(2)(a). ORS 316.992 provides a nonexclusive list of frivolous positions that includes "[a]n argument that wages or salary are not includable in taxable income." ORS 316.992(5)(c).

Taxpayer argues he did not adopt a frivolous position because he never asserted that wages are not taxable. His argument is that, although wages are taxable, the term *wages* has a special meaning in the IRC that differs from the ordinary understanding of the term, such that compensation from private employers is not wages and therefore not taxable. Effectively, taxpayer argues that *most* wages—as the term is commonly understood—are not reportable as income.

Taxpayer's fine distinction does not make his argument nonfrivolous. What is more, his position provided no ground for excluding money received from income. Even supposing his citations to unrelated portions of the IRC had amounted to a colorable argument for his preferred definition of *wages*, he failed to show why the money received should not be reported as nonwage income. The department correctly imposed the frivolous filing penalty, and this court will now impose a frivolous appeal penalty.

In weighing the amount of the penalty, the court notes as a mitigating circumstance that taxpayer has not previously taken a frivolous appeal in this court or any other. Upon consideration, the department is awarded a $1,000 penalty, which taxpayer must pay within 10 days after the court's judgment in this case becomes final. *See* ORS 305.437(1).

D.    *Intent to Evade*

ORS 314.400(6) provides:

"A penalty equal to 100 percent of any deficiency determined by the department shall be assessed and collected if:

"(a) There is a failure to file a report or return with intent to evade the tax; or

"(b) A report or return was falsely prepared and filed with intent to evade the tax."

*See also* ORS 305.265(13). Because taxpayer's return was falsely prepared, the question is whether taxpayer filed his return with "intent to evade the tax[.]"

Where misrepresentation is involved, an intent to evade is an intent to defraud and therefore includes a specific purpose to evade tax known or believed to be owing. *Powell v. Granquist*, 252 F2d 56, 60 (9th Cir 1958); *cf. Kawashima v. Holder*, 565 US 478, 488, 132 S Ct 1166, 182 L Ed 2d 1 (2012) (holding fraud, although "almost invariably" involved in tax evasion, is not "necessarily" involved where evasion statute lacks false-filing element).

Because "fraudulent intent is rarely established by direct evidence," courts infer intent from circumstantial evidence. *Bradford v. Comm'r.*, 796 F2d 303, 307 (9th Cir 1986); *Gossack v. Dept. of Rev.*, TC–MD 140320N (Or Tax M Div Jan 8, 2015). Courts have identified several "badges of fraud," including: (1) understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealing assets; and (6) failure to cooperate with tax authorities. *Id*. Failure to file returns after having previously done so "weighs heavily" against a taxpayer because it shows the taxpayer's awareness of the filing obligation. *DeVries v. Comm'r (DeVries)*, 102 TCM (CCH) 125 (2011). Tax protester arguments, by themselves, do not establish fraud. *Kotmair v. Comm'r*, 86 TC 1253, 1262 (1986). However, they "may be indicative of fraud if made in conjunction with affirmative acts designed to evade paying  * * * income tax." *DeVries*, 102 TCM (CCH) 125.

In this case, taxpayer's filing history clearly shows he was once aware of his obligation to report income and pay income tax. That circumstance weighs heavily against him in considering whether his later understatement was made with fraudulent intent. Much depends on whether taxpayer could offer a plausible explanation for his change in behavior. However, taxpayer offered only vague testimony about why he filed a zero return. He did not specify the online article he read or its author, nor did he give details about the research that led him to change his mind. Overall, taxpayer was quite reserved in his testimony about his state of mind.

Of particular note is taxpayer's refusal to explain why, after calculating a federal overpayment of $9,231.52, he requested a refund of only $2,500. His terse statement that it was his "personal preference" is simply not credible. A personal preference to give the government money is inconsistent with taxpayer's course of conduct in filing zero returns.

Given taxpayer's evident knowledge of his tax obligations, his vague explanation for switching to a frivolous tax position, and his refusal to explain the inconsistency between his reported federal overpayment and requested refund, the court finds by clear and convincing evidence that taxpayer filed a false return with intent to evade his personal income tax. Because the evidence meets the higher standard of proof generally applicable in fraud cases, it is not necessary to resolve whether that standard applies in intent-to-evade cases or whether the burden falls on the department instead of the taxpayer.[4]

/ / /

/ / /

---

[4] ORS 305.427 generally places the burden of proof on a taxpayer seeking relief from an assessment, and such a taxpayer must sustain that burden by a "preponderance of the evidence." However, where the intent-to-evade penalty has been assessed, such a placement might require the taxpayer to disprove fraudulent intent. It is not clear that such a requirement would be permissible under the Due Process Clause. *Cf. Norwood v. Harrison*, 413 US 455, 471, 93 S Ct 2804, 37 L Ed 2d 723 (1973) ("no one can be required, consistent with due process, to prove the absence of violation of law").

A line of U.S. Supreme Court decisions requires the higher "clear and convincing" standard of evidence "in various quasi-criminal proceedings or where the proceedings threaten the individual involved with a significant deprivation of liberty or with a stigma." *Riley Hill General Contractor. v. Tandy Corp.*, 303 Or 390, 401, 737 P2d 595 (1987) (citing cases). The intent-to-evade penalty appears to be "quasi-criminal"—the same activity subject to civil penalty under ORS 314.400(6) is a felony under ORS 314.075 and 314.991(1). And it also imposes a stigma—the intent to defraud makes tax evasion a "crime of moral turpitude" under the Immigration and Nationality Act. *Carty v. Ashcroft*, 395 F3d 1081, 1085 (9th Cir 2005).

The federal district and appellate courts have long required the Internal Revenue Service to prove fraud by clear and convincing evidence, independently of the 1928 Code provision setting that standard in U.S. Tax Court proceedings. *See, e.g.*, *Budd v. Comm'r*, 43 F2d 509, 512–13 (3d Cir 1930) (holding pre-1928 court rule placing burden of proof on petitioner was inapplicable to fraud); *Ohlinger v. United States*, 219 F2d 310, 312 (9th Cir 1955) (stating 1928 Code provision placing burden on Commissioner in fraud cases was "statutory declaration of what has always been the law, not only in the Tax Court, but in the District Court as well"); *Paddock v. United States*, 280 F2d 563, 566–67 (2d Cir 1960) (relating "monolithic authority of seven courts of appeals" placing burden on Commissioner in fraud cases).

### III. CONCLUSION

The court concludes that taxpayer filed a false return with intent to evade his personal income tax, that the department's assessment was lawful, and that the position asserted by taxpayer was frivolous. Now, therefore,

IT IS THE DECISION OF THIS COURT that taxpayer's appeal is denied.

IT IS FURTHER DECIDED that, no later than 10 days after the judgment in this case becomes final, taxpayer shall pay to the department an additional penalty of $1,000 for his frivolous appeal.

Dated this ____ day of August, 2018.

POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Lundgren and entered on August 6, 2018.*